**RICO CORPORATION**

v.

**TOWN OF EXETER, et. al.**

**No. 2003–3–Appeal.**

Supreme Court of Rhode Island.

Dec. 4, 2003.

---

William Mark Russo, for Plaintiff.

James P. Marusak, Providence, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

## OPINION

PER CURIAM.

In this declaratory judgment action concerning the continued operation of the plaintiff RICO Corporation's (RICO) nonconforming sand and gravel earth removal business, RICO seeks review of a decision in which a Superior Court trial justice denied a motion to amend its complaint after remand from this Court, see *RICO Corp. v. Town of Exeter*, 787 A.2d 1136 (R.I.2001) (*RICO I*). Thereafter, the court entered judgment in favor of the defendant, the Town of Exeter. This matter was before the Superior Court on remand from this Court in order to determine a single factual issue on which resolution of the case depended. After nearly a decade of life in the halls of the Rhode Island judiciary, this matter finally will rest upon our holding that the trial justice did not abuse her discretion in denying the plaintiff's motion to amend, nor did she err in forgoing a trial by entering judgment in favor of the defendant. For the reasons set forth herein, we affirm the judgment of the Superior Court. A summary of the pertinent facts and travel of the case are provided as follows.

RICO originally filed this action in Superior Court in 1995, seeking a declaratory judgment and injunctive relief to prevent the town from interfering with its sand and gravel earth removal operations on the

Exeter land that it purchased in 1989 from Marcel and Barbara LaCroix. Despite documentation issued by the town at the time RICO bought the land, stating that the land was properly licensed and zoned for such purposes, and despite the town's subsequent issuance of licenses to RICO, the town issued a cease and desist order to RICO upon a finding that RICO's operations exceeded the scope of what was allowed by the town.[1] In response to RICO's declaratory judgment action, the town counterclaimed with its own allegations that RICO was neither properly licensed nor operating in an area zoned for earth removal operations. The town questioned whether RICO ever had a valid preexisting nonconforming use of the property.

A determination was made in the Superior Court on each party's motion for summary judgment, and a trial followed on the issues that remained. Throughout the initial travel of the case in Superior Court, both the motion justice and the trial justice regarded RICO as having a valid preexisting nonconforming use on its land based on a previous finding by the Exeter Zoning Board of Review to this effect; the trial court considered this finding binding upon it.[2] Both RICO and the town appealed the lower court decision.

On appeal, this Court reversed the lower court grant of partial summary judgment and held the final judgment invalid because each relied upon the zoning board of review's 1993 finding that RICO's operations constituted a valid preexisting nonconforming use. *RICO I*, 787 A.2d at

---

1. The town was alerted to the issue of the legality of RICO's operations after several neighbors complained of heavy traffic in the area and of the detrimental effects that blasting had on their property.

2. A Superior Court summary judgment hearing justice considered the zoning board's

preexisting nonconforming use findings valid and binding upon it because the decision was never appealed; at trial, a different justice subsequently determined that the findings made by the hearing justice had become the law of the case and were binding upon her.

1138. This Court determined that the zoning board of review had lacked subject matter jurisdiction over the nonconforming use issue, and that therefore, the issue raised by the town challenging the existence of the alleged nonconforming use constituted a material issue of fact not suited for determination on a cross-motion for summary judgment. Furthermore, proper resolution of that material fact was essential to support the validity of the final judgment in the case. To resolve this material issue of fact, the Supreme Court remanded the case to the Superior Court for "a full evidentiary and fact intensive inquiry at trial to determine whether, before May 2, 1977, Marcel [LaCroix, RICO's predecessor-in-interest] had been operating a lawfully licensed sand and gravel-earth removal business upon his property." *RICO I*, 787 A.2d at 1145.

The rationale behind this mandate was the possibility that RICO may have acquired a valid nonconforming use if it was determined that LaCroix had been legally licensed when the town had so required. The Court designated May 2, 1977, as the relevant reference date because it was the date on which the town's first comprehensive zoning ordinance became effective, placing the subject land in a rural/residential zone that prohibited gravel, sand and quarry uses. This zoning ordinance followed a 1973 ordinance that instituted the town's first licensing requirement for earth removal operations. Based on these enactment dates, this Court reasoned that any unlicensed earth removal operations in the town of Exeter after the 1973 licensing ordinance, but before the 1977 zoning ordinance, would not constitute a legal preexisting use and therefore could not have ripened into a valid nonconforming use that RICO might acquire.[3] In short, the future of RICO's ability to legally operate gravel and earth removal operations on its land depended entirely on whether its predecessor-in-interest had been operating legally.[4]

Upon remand to the Superior Court, the parties conducted discovery on the single issue of prior nonconforming use as articulated by this Court. Based on this additional discovery, RICO filed a motion to amend its complaint pursuant to Rule 15(a) of the Superior Court Rules of Civil Procedure.[5] RICO sought to add two claims to

3. This Court has described a nonconforming use as "a particular use of property that does not conform to the zoning restrictions applicable to that property but which use is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." *RICO Corp. v. Town of Exeter*, 787 A.2d 1136, 1144 (R.I.2001) (*RICO I*) (citing *Town of Scituate v. O'Rourke*, 103 R.I. 499, 503, 239 A.2d 176, 179 (1968)).

4. In this Court's discussion on the original appeal in this case, we recognized that "[f]or a nonconforming use to be sanctioned, it must be lawfully established prior to the implementation of the zoning restriction or regulation." *RICO I*, 787 A.2d at 1144 (quoting *O'Rourke*, 103 R.I. at 504, 239 A.2d at 180). Hence, it follows that the failure to establish a lawful use on the subject property prior to the 1977 implementation of Exeter's zoning ordinance, which, after the 1973 enactment of the licensing ordinance, is demonstrated by evidence of a license, would result in the inability to recognize that a valid preexisting nonconforming use existed.

5. Rule 15 of the Superior Court Rules of Civil Procedure provides in relevant part:

"**Amended and supplemental pleadings.—** *(a) Amendments.* A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the

its complaint: a declaratory judgment claim based on equitable estoppel and an equal protection claim based upon accusations of selective enforcement of the town's licensing and zoning requirements.[6] It sought to have the town equitably estopped from retroactively enforcing the earth removal ordinance in the face of the zoning board of review's findings that its operation was a lawfully established nonconforming use. Furthermore, RICO sought to have the town estopped from arguing that RICO's operation is not a "lawful, pre-existing, non-conforming use." To support its motion, RICO alleged that it had preliminary evidence to suggest that the town had neither enforced its zoning ordinance nor issued any licenses to any gravel operators until approximately ten years after the earth removal ordinances were enacted.[7]

The town objected to RICO's motion, arguing that the proposed amendment exceeded the scope of the Supreme Court's mandate and was futile. Further, it argued that a declaratory judgment relative to estoppel on an agency appeal was inappropriate and that such claim already had been fully litigated.

After a hearing on RICO's motion to amend, the trial justice denied the motion as beyond the instructions of this Court. Furthermore, after a thorough analysis of the parties' positions relative to the limited issue before her on remand, she determined that a trial was not required based on her finding that "RICO has essentially conceded the only factual issue still in dispute[.]" This decision was based in part on the realization that, in seeking to amend its complaint with an estoppel argument, RICO sought to prevail not by proving that LaCroix had a license from 1973–1977, but by demonstrating that a license was not the proper indication of legality since the town had not issued licenses during the time in question. Based on RICO's allegations, the trial justice concluded that RICO conceded the only issue that remained to be determined on remand, namely, "that before May 2, 1977, RICO's predecessor had not been operating a lawfully licensed sand and gravel-earth removal business upon his property. Therefore, RICO's predecessor could not have acquired a valid nonconforming use benefiting the property, and none could have been conveyed to RICO." [8] Limited by this Court's remand, and constrained only to make a determination on this narrowly defined issue, the trial justice determined that a trial would not benefit RICO. The trial justice then ordered that judgment enter in favor of the town in its declaratory judgment action. In sum, the trial justice rendered her decision without commenting on the merits of RICO's mo-

---

adverse party; and leave shall be freely given when justice so requires."

6. On remand to the Superior Court, the trial justice noted in her decision that the estoppel issue now asserted by RICO differs from the estoppel issue addressed by this Court in the initial appeal of *RICO I*. The issue then discussed by the Court was whether Exeter should be equitably estopped from totally prohibiting the extraction of ledge on RICO's property.

7. RICO suggested that, thus far in the discovery process, it had discovered only two appli-

cations that had been made to the town for earth removal licenses during the 1970's and that both applications had been tabled because of pending litigation. RICO believed such evidence to be an indication that LaCroix's application probably would have been tabled as well and no license issued to him.

8. RICO admitted to this Court at oral argument that its predecessor-in-interest had not obtained a license until 1985, at least seven years after the 1977 zoning ordinance took effect in Exeter.

tion, thereby following the strict terms of our earlier decision, and addressing concerns of judicial economy and finality in litigation.[9]

Furthermore, the trial justice stated that RICO could have advanced its estoppel theory when the town had originally counterclaimed and put RICO on notice that the status of the earth removal business was in doubt. The trial justice determined that in its remand decision, this Court had impliedly addressed the estoppel issues already. She acknowledged that, although it may be within a motion justice's discretion to allow an amended pleading pursuant to Rule 15(a) even after the matter has been remanded on appeal, and although a motion to amend generally is liberally allowed absent a showing of extreme prejudice, she considered Rule 15(a) inapplicable to the instant matter because it was inconsistent with the clear and explicit remand instructions of this Court.

Now on appeal again, this case was heard at oral argument on October 8, 2003, pursuant to an order that directed all parties to appear in order to show cause why the issues raised on this appeal should not be summarily decided. After considering the arguments of counsel and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and shall proceed to decide the case at this time.

RICO makes two assertions in support of its appeal. First, it assigns error to the trial justice's decision to deny its motion to amend. Second, it faults the trial justice for denying it the opportunity to complete discovery and undertake a full evidentiary and fact intensive inquiry at trial consistent with this Court's mandate.

The town applauds the trial justice's finding that RICO had conceded the only factual issue in dispute. Furthermore, it argues that RICO's attempt to amend ignored the limits of the remand, sought to address facts that may have occurred eight years earlier, and were untimely, irrelevant, inappropriate, and prejudicial.

■ We hold that the trial justice neither abused her discretion nor did she err when she denied RICO's motion to amend and found in favor of the Town of Exeter without conducting a trial. In light of the events that transpired on remand, we discern her reasoning and analysis to be sound and the disposition of the case to be correct. We affirm the judgment of the Superior Court.

■ On the occasions in which a party challenges a trial justice's ruling on a motion to amend a pleading, this Court's role on appeal is limited to a review of that ruling under an abuse of discretion standard. The denial of a motion to amend is within the sound discretion of the trial justice, and this Court will not disturb such a finding absent a clear showing that such discretion was abused. *Granoff Realty II, Limited Partnership v. Rossi*, 823 A.2d 296, 298 (R.I.2003); *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 751 (R.I.1997). Although Rule 15(a) liberally permits amendment absent a showing of extreme prejudice, *Granoff*, 823 A.2d at 298, and this Court has permitted amendments to pleadings even after trial, *see Bourdon's*, 704 A.2d at 751 (citing *Mikaeli-*

---

9. The trial justice reiterated this position upon denying a subsequent "motion to reconsider" brought by RICO after its motion to amend was denied. RICO argued at the hearing on this motion, which was construed as a Super.R.Civ.P. Rule 60(b) motion to vacate, that it sought reconsideration of the trial justice's decision that "the motion to amend embodied an admission that [RICO] could not demonstrate certain facts to the court [regarding licensure]."

*an v. Drug Abuse Unit*, 501 A.2d 721, 722 (R.I.1985)), the risk of substantial prejudice generally increases with the passage of time. *Vincent v. Musone*, 572 A.2d 280, 283 (R.I.1990); *see O'Connell v. Finlay*, 583 A.2d 546, 548 (R.I.1990) (trial justice did not abuse his discretion in refusing an amendment requested six years after the original complaint and well into the trial).

We will not disturb the trial justice's denial of RICO's motion to amend. Her decision was based on well-grounded concerns of the appropriateness and relevance of RICO's proposed amendments since they effectively fell outside the scope of *RICO I*. The trial justice properly addressed the issue of licensure between 1973 and 1977, in keeping with the narrow scope and purpose of this Court's explicit instructions. In so acting, she was careful not to exceed the scope of our directions in *RICO I*. Indeed, her doing so may have needlessly prolonged this case. Failure to adhere to the limited scope and purpose of a remand from this Court has been grounds for an additional remand for the purpose of compliance. *See Lemek v. Washington Oaks, Inc.*, 524 A.2d 597, 598 (R.I.1987).

Generally, " 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.' " *State v. Collier*, 263 Kan. 629, 952 P.2d 1326, 1331 (1998) (quoting *Casey v. Planned Parenthood of Southeastern Pennsylvania*, 14 F.3d 848, 856 (3d Cir. 1994)). Often referred to as the mandate rule, "[a] corollary of the law of the case doctrine," it "provides that a lower court on remand must implement both the *letter and spirit* of the [appellate court's] mandate, and may not disregard the explicit directives of that court." *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir.2002) (quoting *United States v. Becerra*, 155 F.3d 740, 753 (5th Cir.1998)). Although

some courts have recognized that when the appellate court's remand is general in nature the trial court considers matters not foreclosed by the mandate, *see Tu v. State*, 336 Md. 406, 648 A.2d 993, 998 (1994), application of the mandate rule is typically less flexible than other branches of the law of the case doctrine and "must be followed even though the lower court subsequently addressing the issue may believe that the issue could have been better decided in another fashion." *Thurston v. Box Elder County*, 892 P.2d 1034, 1038 (Utah 1995). In the instant case, the trial justice was correct in following the terms of the mandate and not expanding the remand to other issues RICO brought in its motion to amend.

Indeed the assertions now made by RICO regarding the town's failure to issue any licenses until 1985 and the town's alleged selective enforcement of earth removal ordinance violations were discoverable during the preliminary stages of the case. Although there was an apparent misconception that RICO had a valid preexisting use on its land based on a reliance of the initial determinations made in the Superior Court, RICO was on notice from the town's counterclaim that the status of its earth removal operations was being called into question.

Also, the trial justice did not err in finding in favor of the town without conducting a trial on the narrow issue of licensure on remand. It is true that this Court was clear in its mandate to the Superior Court: "[Conduct] a full evidentiary and fact intensive inquiry at trial to determine whether, before May 2, 1977, Marcel had been operating a lawfully licensed sand and gravel-earth removal business upon his property." *RICO I*, 787 A.2d at 1145. However, on remand RICO effectively admitted to the trial justice prior to trial that a license was neither sought

nor obtained by LaCroix between 1973 and 1977. Moreover, the very nature of RICO's arguments to support its motion to amend was grounded on the basic concession that no license was issued to it during the period in question. Based on these admissions, RICO effectively addressed the narrow issue which this Court wished to have determined. The trial justice properly found that a trial on the issue of licensure would have been futile. We agree.

For the reasons set forth above, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.